# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

**UNITED STATES OF AMERICA**                    **CRIMINAL COMPLAINT**

*v.*

**NICHOLAS SCOTT ASPA**                    CASE NUMBER:  MJ-26-04046-PCT-CDB

I, David Delio, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## COUNT 1

On or about November 10. 2024, in the District of Arizona, within the confines of the Colorado River Indian Tribes Indian Reservation, Indian Country, the defendant, NICHOLAS SCOTT ASPA, an Indian, did knowingly and intentionally assault M.D. with a dangerous weapon, that is, a knife, with intent to do bodily harm, in violation of Title 18 U.S.C. §§ 1153 and 113(a)(3).

## COUNT 2

On or about November 10. 2024, in the District of Arizona, within the confines of the Colorado River Indian Tribes Indian Reservation, Indian Country, the defendant, NICHOLAS SCOTT ASPA, an Indian, did knowingly, intentionally, and recklessly assault M.D., resulting in serious bodily injury, in violation of Title 18 U.S.C. §§ 1153 and 113(a)(6).

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this Complaint is based on the following facts:  **See attached Affidavit incorporated herein.**

Continued on an attachment sheet and made a part hereof:  ☒ Yes    ☐ No

REVIEWED BY:  *AUSA Dimitra H. Sampson*

  X   Pursuant to 28 U.S.C. § 1746(2), I declare
        that the foregoing is true and correct.

- 1 -

**CC:  USM & PTS**

- 2 -

David Delio, Special Agent, FBI
Complainant's Name and Title

DAVID DELIO
Digitally signed by DAVID DELIO
Date: 2026.02.13 08:51:23 -07'00'

Complainant's Signature          Date

X      Sworn by Telephone

Date/Time

Flagstaff, Arizona
City and State

Camille
D. Bibles
Digitally signed by
Camille D. Bibles
Date: 2026.02.13
11:42:21 -07'00'

Camille D. Bibles, U.S. Magistrate Judge
Name & Title of Judicial Office

Signature of Judicial Officer

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

**<u>ELECTRONICALLY SUBMITTED AFFIDAVIT</u>**

I, <u>FBI Special Agent David Delio</u>, state under oath as follows:

1.      I am employed as a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and I have been so employed since September 2019.  Your affiant has approximately six years of experience as a sworn federal law enforcement officer.  I am currently assigned to the FBI Phoenix Division, Lake Havasu City Resident Agency.  My primary duties include the investigation of violent crimes committed in Indian Country, including physical assaults.

2.      The information contained in this affidavit is based upon my personal knowledge, training, and experience, as well as information provided to me by other law enforcement officers and/or witnesses including those listed herein.  Because this affidavit is made to establish probable cause, I have not listed every fact known regarding this investigation.

**<u>Introduction</u>**

3.      This case involves the November 10, 2024, assault of M.D., resulting in serious bodily injury, by Nicholas Scott Aspa (hereinafter "Aspa").  The assault occurred outside of a Circle K Convenience Store, located on S. California Ave, in Parker, AZ, which is within the exterior boundaries of the Colorado River Indian Tribes (CRIT) Indian Reservation.  Aspa is an Indian and member of the CRIT, a

Federally recognized Indian Tribe.  As set forth further below, Aspa assaulted M.D. with a knife, in violation of 18 U.S.C. §§ 1153 and 113(a)(3), Assault With a Dangerous Weapon, and caused serious bodily injury to M.D., in violation of 18 U.S.C. §§ 1153 and 113(a)(6), Assault Resulting in Serious Bodily Injury.

**Investigation/Probable Cause**

4.     On November 10, 2024, your affiant received a call from CRIT Police Department (CRIT PD) Criminal Investigator Ricardo Corral (CI Corral) regarding an assault which occurred that day.  It was alleged that the victim, M.D., was stabbed in the upper torso, with a knife, by Aspa.  Due to his injuries, M.D. had to be life-flown to Sunrise Hospital in Las Vegas, NV.  The assault occurred outside of a Circle K Convenience Store, located on S. California Ave, in Parker, AZ, within the exterior boundaries of the CRIT Indian Reservation, Indian Country, in the District of Arizona.  Aspa and M.D. were both enrolled members of the Colorado River Indian Tribes, a Federally recognized Indian Tribe.

5.     On November 13, 2024, your affiant conducted a recorded interview of M.D.  The interview was conducted in M.D.'s hospital room at Sunrise Hospital, in Las Vegas, NV.  Also present during the interview was Sunrise Hospital Supervisory Social Worker Christine Allison.  After being informed of the identity of the interviewing Agent, and the nature of the interview, M.D. provided the following information:

2

a. C.D.1, C.D.2, and E.S. were all there and drinking. V.P. was "DD'ing" for everyone and was not drinking. Aspa was there with his girlfriend, K.Y.

b. Aspa seemed like he was on something, but he was always on drugs. Aspa was adopted, but is a cousin to M.D. Aspa and E.S. have some history; so, when they first picked up Aspa, before going to Circle K, M.D. asked Aspa if, "[...] we were cool", to make sure that everything was going to be alright if they were hanging out together. Aspa responded, "yeah."

c. While at Circle K, V.P. was inside the convenience store. M.D. remembered getting out of the car; he was standing outside of the car with E.S. and Aspa. M.D. remembered some things, but not everything. Some of those present during the altercation had since reached out to M.D., while he was recovering in the hospital; through talking with them, he remembered more of what took place. Aspa had tried to get into the driver's seat of the vehicle to steal the car. It wasn't the first time he "jacked" a car, and M.D. believed that Aspa had a pending Tribal case for stealing another car.

d. M.D. tried to pull Aspa out of the driver's side of the car to prevent him from stealing it. When M.D. tried to pull Aspa out of the driver's compartment, Aspa pushed M.D. M.D. then "socked" Aspa

3

(punched him).  After M.D. punched Aspa, Aspa struck M.D. by taking a wide swing with his left fist, which landed on M.D.'s upper chest, underneath his arm.  M.D. didn't notice right away that he had been stabbed.  Everyone, except K.Y. and Aspa, got back in the car and started to drive away from Circle K.

e.  While driving away from Circle K, M.D. noticed he was stabbed. Everyone in the car was freaking out and saying M.D. was bleeding. E.S. tried stuffing the area of M.D.'s wound with E.S.'s jacket. M.D. was yelling at everyone to not touch him and to calm down. M.D. was calm, but everyone else was freaking out.  M.D. told them to take him to the hospital, so V.P. drove him to Indian Health Services (IHS).  M.D. didn't remember anything from when he was at IHS.  When he woke up next, he was at Sunrise Hospital, his arm was sore, and he had a chest tube.

6. On November 12, 2024, your affiant and CRIT CI Corral conducted an interview of C.D.2.  After being informed of the identity of the interviewing Agent and CI, and the nature of the interview, C.D.2 provided the following information:

a.  C.D.2 was sitting in the car with her sister, C.D.1.  C.D.2 didn't really see anything; she just heard yelling during the argument outside of Circle K.  While they were in the car, she heard M.D. say,

4

"he slit me."  C.D.2 noticed M.D. was bleeding and could hear air coming from out of M.D.'s chest.  C.D.2 used M.D.'s shirt and held pressure on the wound.

7. On November 12, 2024, your affiant and CI Corral conducted an interview of C.D.1.  After being informed of the identity of the interviewing Agent and CI, and the nature of the interview, C.D.1 provided the following information:

   a. C.D.1 and her boyfriend V.P., who was driving the car, picked up M.D., then C.D.1.'s sister, C.D.2., and then E.S.  All riding together, they drove into town, where they picked up K.Y. and K.Y.'s boyfriend, Aspa.  Once Aspa and K.Y. were also in the car, V.P. drove the vehicle to Circle K on S. California Ave, in Parker.

   b. Once at Circle K, V.P. went inside.  C.D.1. and C.D.2. were in the vehicle.  Aspa was outside of the vehicle, arguing with E.S.  M.D. seemed to have stepped in, between Aspa and E.S., to stop the argument.  C.D.1 couldn't really see out of the car.  K.Y. and Aspa seemed like they were going to leave; C.D.1. told M.D. and E.S. to get back into the car.  At one point, Aspa came to the driver's side of the car to seemingly try and get the keys.

   c. Everyone got back in the car except for K.Y. and Aspa, who had left.  C.D.1 then saw blood on M.D.

8. On November 12, 2024, your affiant and CI Corral conducted an interview of V.P.  After being informed of the identity of the interviewing Agent and CI, and the nature of the interview, V.P. provided the following information:

    a. V.P. didn't see anything as he was inside the Circle K.  V.P. picked up Aspa and Aspa's girlfriend, K.Y., near IHS, then drove to Circle K.  Aspa was acting like he was on drugs when they picked him up. V.P.'S girlfriend, C.D.1., was in the passenger seat when they picked up Aspa.  C.D.1. told V.P. that Aspa was acting crazy and, at one point, had tried to take the keys or drive off in the car, but V.P. had the keys on his person, inside Circle K.

    b. After the altercation between Aspa and M.D., Aspa and K.Y. ran off.  Everyone else got back in the car and V.P. drove away from Circle K.  While in the car, M.D. was touching his shoulder area and said that his injury was burning; that's when M.D. first noticed that he had been stabbed.  V.P. drove M.D. to IHS.

9. On November 10, 2024, your affiant and CI Corral conducted an interview of E.S.  After being informed of the identity of the interviewing Agent and CI, and the nature of the interview, E.S. provided the following information:

a.  Prior to M.D. being stabbed, E.S. had been picked up at his house by M.D., an unknown female (front-seat passenger), and an unknown male (driver).  He was picked up in a white four-door sedan.  E.S. didn't really know the driver and front seat passenger. E.S. was riding in the back of the car with M.D.  They drove to Mochum (known to investigators as a Tribal housing community on the reservation), where they picked up Aspa.  Aspa sat between M.D. and E.S. while they drove to Circle K to buy alcohol.  Aspa was acting "jittery" from the moment he got into the car.

b.  Upon arrival to Circle K, the vehicle they were in parked on the west side of the building, facing the U.S. Post Office (USPS) fence.  The unknown male and female went into the Circle K.  E.S. remained in the vehicle and both M.D. and Aspa were outside of the vehicle, near the front of the vehicle, between the vehicle and the USPS fence. E.S. witnessed Aspa seemingly push M.D. and then M.D. pushed Aspa back; immediately after being pushed back, Aspa ran toward the USPS fence, and then ran west, along the fence, until he rounded the USPS and seemingly continued north.

c.  M.D. got back into the rear passenger compartment of the sedan. The unknown driver and passenger returned to the vehicle, and they all drove off toward 100 homes (a Tribal housing community in

7

Parker).  As they neared 100 homes, E.S. noticed that M.D. was bleeding.  M.D. had not noticed until that time as well.  E.S. believed that M.D. hadn't noticed because of adrenaline.  M.D. touched the injury site area and stated, "he got me," referring to when Aspa had struck M.D. outside of Circle K.

    d. E.S. didn't really mess with Aspa as Aspa had a reputation in the area for being assaultive.  Aspa also once stole a knife from E.S.'s mother's house.  E.S. did not know if it was the same knife used to stab M.D.  E.S. described the knife as about five inched long with a three-inch blade.  E.S. would use it for hunting.

10. On November 14, 2024, your affiant and CI Corral conducted a custodial, audio recorded, interview of Aspa.  The interview took place at the Bureau of Indian Affairs (BIA) Offices in Parker.  Aspa was read his rights via the FBI Advice of Rights Form FD-395.  Aspa stated he understood his rights and then signed the FD-395 Advice of Rights Form.  After being advised of the identity of the interviewing Agent and CI, and the nature of the interview, Aspa provided the following information:

    a. Aspa has been, "[...] bummin' it [...]," staying around town.  His girlfriend was K.Y.  Aspa was drinking that night.  Aspa wanted to know what the other people who were there, at Circle K, said.

8

b.  [Agent Note: SA Delio summarized the witness accounts of what transpired].

c.  Most of what everyone else said was true.  Everyone was arguing. E.S. brought up the past; he and Aspa were bumping heads, but then E.S. said it was cool.  M.D. brought up the past, on and off; M.D. was trying to make sure everything was cool.  It all happened fast.

d.  M.D. and E.S. then started exchanging words with Aspa's lady, K.Y.  Aspa didn't remember everything that was said; he could try and put it together, but he didn't want to say the wrong thing.  Aspa was basically just trying to have his lady's back.  E.S. was getting aggressive and coming towards Aspa, and that's when M.D. stepped in between Aspa and E.S.  M.D. was trying to push Aspa away. Aspa felt like they were bullying his lady.  It wasn't so much what they said, but how they said it; they were being rude and disrespectful.

e.  Aspa didn't remember going into the driver's seat of the vehicle. Aspa just kind of reacted.  Aspa affirmed that M.D. got between Aspa and E.S., pushing Aspa away, and then Aspa pushed M.D. back.  M.D. did throw a punch, but it kind of missed Aspa.  When the punch missed Aspa, Aspa noticed that his lady was standing next to him; Aspa though, "is he trying to punch my lady?"  That's when

9

Aspa reacted; he punched M.D., or thought that he punched him. Aspa and K.Y. ran toward the post office and then 100 homes because K.Y. was trying to leave before things escalated.

f.  Aspa was surprised too that it happened like that. Aspa normally carries a knife because he got stabbed back in 2020. He always carries something in case his past catches up with him and because of his reputation. Aspa wasn't so much trying to end it, but was trying to stop M.D. from throwing another punch and possibly hitting Aspa's lady.

g.  Before "punching" M.D., Aspa was gripping the blade. Aspa already had the knife ready. The knife was in his pocket and he had his hand on it; it was a flip-out pocket knife, but not the one that the police took from him upon his arrest, as he had only just gotten that one. Aspa no longer had the knife used in the incident with M.D. because it fell out of his pocket. Aspa was running, trying to get out of the area, when he lost the knife. Aspa thought they might come after him after what happened. But they ran towards 100 Homes.

h.  M.D. is Aspa's cousin; what happened wasn't Aspa's intention; he was just trying to have a good time. M.D. is always positive. He's Aspa's favorite cousin. Aspa's lady didn't even know what Aspa did until way after it happened. She found out through the Internet.

10

After it happened, Aspa was in shock and his adrenaline was up; he was thinking, "[...] what am I doing?"

11. M.D.'s Sunrise Hospital medical records, following the assault by Aspa, dated, state the following:

    a. "27M with no significant past medical history presenting as trauma transfer from Parker Medical Center following a stab to the right upper chest with penetration pleural cavity with negative headstrike, no loss of consciousness, no anticoagulation use, and GCS 15 on presentation. Patient was found to have a penetrating wound to the right shoulder, hemothorax, and right 2nd rib fracture displaced. Patient had a tertiary trauma survey in which no additional injures were found. Patient with right chest tube which was discontinued . . . Patient's pain has remained well-controlled."

    b. Under the "Med Rec" section and "Discharge Meds:" were listed the following medications prescribed at discharge: "Oxycodone HCL, Methocarbamol, Docusate Sodium, and Lidocaine."

## Conclusion

Based on the foregoing, I believe that there is probable cause to support that Nicholas Scott Aspa has violated 18 U.S.C. §§ 1153 and 113(a)(3), Assault With a

11

Dangerous Weapon, and 18 U.S.C. §§ 1153 and 113(a)(6), Assault Resulting In

Serious Bodily Injury.  A warrant for Aspa's arrest is respectfully requested.

**Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.**

Executed on: February _____, 2026

DAVID DELIO  Digitally signed by DAVID DELIO
Date: 2026.02.13 08:55:30 -07'00'

David Delio, Special Agent, FBI

 X  Sworn by Telephone

Date/Time: _____

Camille D. Bibles  Digitally signed by Camille D. Bibles
Date: 2026.02.13 11:41:58 -07'00'

Camille D. Bibles
United States Magistrate Judge

12